UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ANDREW S., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1612-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Andrew S. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 10. Plaintiff also filed a reply brief. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on August 30, 2018, alleging disability beginning July 27, 2016 (the disability onset date), due to scoliosis and bipolar disorder. Transcript ("Tr.") 191-202., 211. Plaintiff's claim was denied initially on December 20, 2018, after which he requested an administrative hearing. Tr. 115-26, 127-29. On December 23, 2019, Administrative Law Judge Michael J. Stacchini ("the ALJ") presided over a video hearing from White Plains,

New York. Tr. 15. Plaintiff appeared and testified in Niagara Falls, New York, and was represented by Anthony DeMarco, an attorney. *Id*. Roxana Rogers-Sullivan, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on February 12, 2020, finding that Plaintiff was not disabled. Tr. 15-24. On September 4, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's February 12, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his February 12, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since August 30, 2018, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: cannabis use disorder, adjustment disorder, bipolar disorder, and scoliosis (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform a full range of medium work as defined in 416.967(c)[1] except that he can engage in frequent stooping, and is able to understand, remember, and carry out simple, routine tasks throughout an eight-hour work day with regularly scheduled breaks at two hour intervals. Additionally, he can have occasional interaction with the general public, coworkers, and supervisors.

5. The claimant is capable of performing past relevant work as an Industrial Cleaner (DOT No. 381.687-018, medium exertion, SVP 2). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since August 30, 2018, the date the application was filed (20 CFR 416.920(f)).

Tr. 15-24.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on August 30, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 24.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ erred in finding the opinion of consulting psychiatric examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano") partially

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

persuasive, but then failing to incorporate Dr. Fabiano's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being into the RFC finding. *See* ECF No. 8-1 at 9-15.

The Commissioner argues in response that the ALJ properly determined that Dr. Fabiano's assessment was partially persuasive because it was well supported by his examination findings and consistent with Plaintiff's limited treatment and activities of daily living. However, argues the Commissioner, Dr. Fabiano's finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work, and the ALJ incorporated Dr. Fabiano's assessment into Plaintiff's RFC by limiting him to simple routine work with no more than occasional interactions.  *See* ECF No. 10-1 at 16-18. Further, argues the Commissioner, the ALJ's RFC finding was supported by substantial evidence, including Dr. Fabiano's observations and assessment, as well as the assessment of state agency psychological consultant. H. Tzetzo, M.D. ("Dr. Tzetzo"), and Plaintiff's unremarkable mental status examination findings. *See id.* at 14-16.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ appropriately considered the medical opinion evidence and articulated good reasons for the persuasiveness assigned in accordance with the Commissioner's regulations and case law. The ALJ's determination that Plaintiff retained the RFC to perform simple routine work with no more than

occasional interactions was supported by substantial evidence, including the opinion evidence, Plaintiff's limited treatment, and his activities of daily living. Accordingly, the Court finds no error.

The record reflects that Plaintiff was treated at Niagara Falls Mental Health Clinic ("Niagara Falls") for cannabis dependence and bipolar disorder from July 5, 2016 through November 9, 2016. Tr. 573-600. Psychiatrist Hany Shehata, M.D. ("Dr. Shehata"), provided medication management, and Bryn Lyon, LMSW ("Ms. Lyon"), provided individual counseling. Tr. 573-600.

On July 5, 2016 and July 19, 2016, Ms. Lyon observed that Plaintiff was alert and cooperative with constrained affect; he presented himself in an appropriate manner; his speech was logical and coherent; his mood was euthymic; his recent and remote memory skills were normal; and his attention span and concentration skills were intact. Tr. 574, 584. On July 5, 2016, Ms. Lyon assessed that Plaintiff remained in control of his ability to non-violently respond to stressors. Tr. 576. On July 18, 2016 and August 22, 2016, Dr. Shehata observed that Plaintiff was friendly, pleasant, and in full control of his impulses. Tr. 578, 589. On November 9, 2016, Plaintiff was discharged for non-compliance with attending scheduled appointments. Tr. 597.

Plaintiff established care at Community Health Center of Buffalo ("CHCB") on September 28, 2016, where he was seen by nurse practitioner Daryl Barber ("Mr. Barber").[2] Tr. 294-97. Plaintiff reported "chronic lower back pain managed with ibuprofen with little effect." Tr. 294. Plaintiff was seen for an annual physical on December 22, 2017, again complaining of lower back pain. Tr. 298-301. He reported a history of mental illness but was not taking any medications. Tr. 298. He was started on ibuprofen and referred to physical therapy. Tr. 299.

---

[2] The Court notes that the ALJ incorrectly referred to Mr. Barber as "Dylan Barber." Tr. 22.

On January 23, 2018, Plaintiff was seen for physical therapy, complaining of back pain from the lumbar spine to the shoulder pain. Tr. 305-08. Although Plaintiff reported a history of scoliosis, it was noted that a 2014 x-ray showed no scoliosis. Tr. 305. On physical examination, he had decreased lordosis and mild kyphosis but full range of motion. Tr. 306. When Plaintiff was advised that physical therapy would consist of an exercise regime, he declined, stating that he was afraid exercise would increase his pain. *Id*. He also declined heat and cold modalities. *Id*. The physical therapist referred Plaintiff to a spine specialist. *Id*.

On May 29, 2018, Plaintiff was seen by Julia Gajewski, ANP-C ("Ms. Gajewski"), at University of Buffalo Neurosurgery ("UB Neurosurgery"), for sclerosis and burning pain down his back Tr. 664. Plaintiff had been referred to UB Neurosurgery by Mr. Barber. *Id*. Ms. Gajewski ordered physical therapy on June 6, 2018, but the referral was placed on hold.  Tr. 320. No further treatment or follow up with UB Neurosurgery appears in the record.

On September 4, 2018, Plaintiff was seen at CHCB for complaints of back pain and completion of DSS paperwork. Tr. 302-03. Plaintiff told Mr. Barber that "he followed up with a back specialist and physical therapy [and] both told him there is nothing wrong with his back." Tr. 302. Mr. Barber assessed that Plaintiff "[was] able to work with no restrictions." *Id*. Upon examination, Mr. Barber observed that Plaintiff's gait was normal, and he demonstrated full muscle strength throughout his arms and legs. *Id*. Plaintiff was advised to continue to use NSAIDs as needed for his back pain. *Id*.

Dr. Fabiano conducted a psychiatric evaluation on October 29, 2018.  Plaintiff complained of sleep difficulties, depressed mood, extreme anger, irritability, and social withdrawal. Tr. 332-33. Plaintiff reported that he smoked marijuana two or three times per week. Tr. 333. Plaintiff further reported that he cleaned, cooked, watched movies, managed his money, and shopped. Tr.

335. Upon mental status examination, Dr. Fabiano observed that Plaintiff was cooperative, and his manner of relating, social skills, and overall presentation were adequate. Tr. 333. Plaintiff's expressive and receptive language skills were also adequate; and his thought processes were coherent and goal directed, with no hallucinations, delusions, nor paranoia. Tr. 334. Plaintiff reported that his mood was "mixed." *Id*. Dr. Fabiano observed that Plaintiff's affect was apathetic; he was fully oriented; his attention span and concentration skills were grossly intact. *Id*. Plaintiff's recent and remote memory skills were mildly impaired due to distractibility; his intellectual functioning was within the average-to-below-average range; and his general fund of information was somewhat limited. His insight and judgment were fair. *Id*.

Dr. Fabiano diagnosed cannabis, substance use disorder; and chronic adjustment disorder with disturbance of mood and conduct. Tr. 335. Dr. Fabiano opined that Plaintiff's substance abuse and psychiatric problems were not significant enough to interfere with his daily functioning. Tr. 335. Dr. Fabiano assessed no limitations in making work-related decisions, sustaining concentration and performing a task at a consistent pace, and sustaining an ordinary routine and regular attendance at work; mild limitations in understanding, remembering, and applying simple instructions; and moderate limitations in interacting with co-workers, supervisors, and/or the public, as well as regulating emotions, controlling behavior, and maintaining well-being. *Id*.

Consultative physician Rita Figueroa, M.D. ("Dr. Figueroa"), examined Plaintiff on October 29, 2018. Tr. 338-40.  Plaintiff complained of back pain due to scoliosis. Tr. 338. Upon examination, Dr. Figueroa observed that Plaintiff's gait and stance were normal; his squat was full; he exhibited no difficulty changing for the examination, getting on and off the examination table, or rising from a seated position. Tr. 339. Plaintiff exhibited diminished ranges of motion in his cervical spine and lumbar spine; full muscle strength and full ranges of motion; normal reflexes

and sensations throughout his arms and legs; hand and finger dexterity were intact; and he demonstrated full grip strength, bilaterally. Tr. 340. Dr. Figueroa diagnosed chronic back pain and assessed moderate limitations in repetitive bending, heavy lifting, and carrying. *Id*.

State agency psychological consultant Dr. Tzetzo reviewed the evidence of record on December 13, 2018. Tr. 76-77. Dr. Tzetzo assessed mild limitations in Plaintiff's ability to understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself and opined that Plaintiff's mental impairment was not severe. *Id*.

Plaintiff was treated for cannabis use disorder at Northpointe Council, Inc. ("NCI") from July 23, 2019 through September 28, 2019. Tr. 484. The treatment records indicate that Plaintiff had been "referred to NCI by DSS."[3] *Id*. After three assessment appointments, Plaintiff was admitted to outpatient treatment on July 23, 2019. *Id*. He was to attend group sessions twice per week and individual sessions with addictions counselor Marissa Cutter ("Ms. Cutter") once per week. *Id*. Ms. Cutter noted that throughout treatment Plaintiff continued to test positive for cannabis and alcohol; refused to seek a higher level of treatment; and discontinued outpatient services. *Id*. In an undated letter, Ashley Jachimiak, Program Director at NCI, noted that Plaintiff had been there "numerous times and has a pattern of not engaging in treatment and refusing recommendations for a higher level of care." Tr. 483; *see* Tr. 370, 393, 417, 442.

On October 8, 2019, Plaintiff was seen as a new patient at Niagara Falls Memorial Primary Care. Tr. 616-19. He reported that he suffered from bipolar disorder and back pain and requested a referral to a chiropractor. Tr. 616. His PHQ-9 score indicated mild depressive symptoms. On physical examination, he was noted to have full range of motion without pain. Tr. 617.

---

[3] A note from Ms. Lyon dated February 26, 2017 indicates that Plaintiff was "mandated by DSS for a substance abuse evaluation which he missed and now is sanctioned by DSS." Tr. 487.

Plaintiff argues that the Commissioner's disability determination was erroneous, because the ALJ's RFC determination was not supported by substantial evidence. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his application on August 30, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not

disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding that Plaintiff retained the RFC to perform simple routine work with no more than occasional interactions, and thus, he was able to perform his past relevant work, as well as other work that exists in significant numbers in the national economy, and was, therefore, not disabled. Tr. 19, 23-24.

13

Plaintiff contends that the ALJ's RFC determination failed to incorporate Dr. Fabiano's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being. *See* ECF No. 8-1 at 14-15. As noted above, Dr. Fabiano assessed that Plaintiff had no limitations in making work-related decisions, sustaining concentration and performing a task at a consistent pace, and sustaining an ordinary routine and regular attendance at work; mild limitations in understanding, remembering, and applying simple instructions; and no more than moderate limitations in interacting with co-workers, supervisors, and/or the public; as well as regulating emotions, controlling behavior, and maintaining well-being. Tr. 335.

The ALJ properly considered Dr. Fabiano's opinion and found it partially persuasive. A consultative psychologist's opinion may serve as substantial evidence in support of an ALJ's decision if the evidence of record supports the opinion, as it does here. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Mongeur v. Heckler*, 722 F.2d at 1039). The ALJ noted that Dr. Fabiano's opinion was well supported by his own examination and consistent with Plaintiff's limited treatment and his activities of daily living, including care of his children. Tr. 21, 40, 253-55, 359. However, the ALJ found that Plaintiff's cannabis use disorder, bipolar disorder, and adjustment disorder are indicative of at least mild (but no more than moderate) limitations in all of his "B" criteria. Tr. 21.

Notably, a finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding that ALJ's determination that claimant could perform simple work tasks was well supported where "None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (holding that a consultative

psychologist's finding of moderate limitations in social functioning supported the ALJ's determination that plaintiff was capable of performing work that "involved simple tasks and allowed for a low-stress environment."). Here, the ALJ incorporated Dr. Fabiano's assessment into Plaintiff's RFC by limiting him to simple routine work with no more than occasional interactions. Tr. 19. Thus, Plaintiff's contention that the ALJ failed to incorporate Dr. Fabiano's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being into the RFC finding is meritless.

Furthermore, the ALJ was not required to adopt Dr. Fabiano's opinion wholesale, as Plaintiff appears to argue. *See* ECF No. 8-1 at 9-15. Nor is the ALJ required to rely on an opinion that mirrored the RFC. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Moreover, there is no requirement that an ALJ's RFC finding be based on a medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental).

The assessment of state agency psychological consultant Dr. Tzetzo further supports the ALJ's RFC determination. Tr. 21, 76-77. Dr. Tzetzo assessed merely mild limitations in Plaintiff's ability to understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Tr. 76-77. State agency psychological consultants, such as Dr. Tzetzo, are highly qualified psychologists, who are experts in Social Security disability evaluations, and an ALJ is entitled to rely on their opinions. 20 C.F.R. § 416.913a(b)(1).

Moreover, as noted above, opinion evidence is only one type of evidence that an ALJ is required to consider. Here, in addition to the opinion evidence, the ALJ also properly noted Plaintiff's unremarkable mental status examination findings and conservative treatment. Tr. 20. *See Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)) (ALJ may consider conservative treatment); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function); *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (improvement with treatment is properly considered in concluding claimant not disabled).

As the ALJ noted, although Plaintiff has been diagnosed with bipolar disorder and adjustment disorder, his reported symptoms were sporadic and inconsistent. Tr. 20-21, 294, 295, 298-99, 303, 315, 324, 335, 404, 429-30.  The ALJ also noted that on October 8, 2019, Plaintiff was given a number of mental health screens, including a PHQ 9 and a GAD 7, and, overall, his symptoms were assessed as mild. Tr. 616. The ALJ further noted that Plaintiff was taking no medications at the time of his hearing, or at the time of his October of 2018 consultative examinations. Tr. 21, 48, 332, 339. Furthermore, Plaintiff's psychiatric treatment providers, Dr. Shehata and Ms. Lyon, observed that his mental status was unremarkable. Tr. 574, 578, 584, 589.

The ALJ also noted Plaintiff's daily activities. Tr. 20. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible). The ALJ noted that Plaintiff prepares simple meals and takes his children to the park; and although Plaintiff alleged difficulty around others, he had good family relationships and socialized with acquaintances playing video games. Tr. 20, 252-58, 335, 338-39.

Based on the foregoing, substantial evidence, including Dr. Fabiano's observations and assessment, the assessment of state agency psychological consultant Dr. Tzetzo, Plaintiff's conservative treatment and unremarkable mental status examinations, and his daily activities supports the ALJ's finding that Plaintiff retained the RFC to perform simple routine work with no more than occasional interactions. Tr. 19.

When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations,

and never the ALJ's burden to disprove them). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the entire record including the medical opinion evidence, the treatment reports, and Plaintiff's testimony, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE